# HUBERT MARSH v. MINNEAPOLIS HERALD, INC.

134 N. W. (2d) 18.

March 19, 1965—No. 39,501.

*Arthur Sund Nelson,* for appellant.
*Vennum, Newhall, Ackman & Goetz,* for respondent.

ROGOSHESKE, JUSTICE.

Plaintiff, employed by defendant for a period of 5 months, brought an action to recover overtime wages claimed due under the Federal Fair Labor Standards Act of 1938. After trial and pursuant to a special verdict of the jury, the court made findings for defendant. Plaintiff appeals from the judgment entered following a denial of his motion for judgment n. o. v. or a new trial.

About 2 weeks after the Minneapolis Star and Tribune newspapers

suspended publication due to a strike, defendant was quickly organized, and before its incorporation on May 4, 1962, began publishing a newspaper, the Minneapolis Daily Herald. Plaintiff was hired on April 30, 1962, the day before the publication of defendant's first issue. He remained continuously employed—admittedly working many and irregular hours each week—until October 1, 1962, when defendant suspended publication. He commenced this action on October 22, 1962, alleging that he was employed as a proofreader, copy worker, and markup man on May 1, 1962, at $90 a week for a 40-hour week upon an oral contract; that he worked over 900 hours overtime, and under the Fair Labor Standards Act of 1938 was entitled to $3,106.69 overtime compensation, an equal amount as damages, and attorneys' fees. By answer and at the pretrial conference, defendant admitted that plaintiff's job classification qualified him for overtime pay up to May 27, 1962, but claimed that from then on he was employed in an executive capacity (an exempt status under the act) and that, in any event, he forfeited his right to all compensation because of disloyalty to defendant. Defendant also counterclaimed for damages for alleged disloyalty in the amount of $1,938, the total salary paid to plaintiff. A second counterclaim for damages for alleged slander was dismissed during trial.

The jury, by special verdict, found (1) that plaintiff was employed until May 27 at $75 and thereafter at $90 a week on an "irregular or fluctuating [work] week" basis; (2) that, except for the week ending May 5 when he worked a total of 87¾ hours, he worked 70 hours each week through the week ending September 8;[1] (3) that from May 27 he was employed in a "bona fide executive capacity"; and (4) that from May 7 to October 1 he failed to perform his duties for defendant with "faithfulness, honesty, diligence, loyalty and obedience."

Upon these findings, the court ordered judgment for defendant. Although defendant claims the findings also would have supported a recovery upon defendant's counterclaim for a forfeiture of wages paid

---

[1]Plaintiff, during trial, relinquished his claim for overtime for the period between September 8 and October 1.

from May 7 to October 1, the court made no such allowance. Defendant made no attempt to secure a modification of the order for judgment.

The parties agree that the only question presented by this appeal is the sufficiency of the evidence to sustain the jury's findings: (1) That plaintiff was employed at a fixed weekly salary for variable or fluctuating hours; (2) that after May 27 he was employed in a bona fide executive capacity; and (3) that from May 7 to October 1 he breached his duty of loyalty to defendant.[2]

The Fair Labor Standards Act of 1938[3] requires an employer covered by the act to pay an employee overtime compensation of 1½ times his hourly rate for all hours worked in excess of 40 hours a week.[4] An employee is entitled to overtime compensation even though his employment is for a fixed weekly salary and the agreement does not limit the number of hours which the employer may require him to work.[5] In such cases, the rate for the purpose of computing overtime is determined by dividing the weekly salary paid by the actual hours worked per week.[6] One employed in a bona fide executive capacity is not entitled to the benefits of the act.[7] When the employer claims such exempt status, he has the burden of proving the existence of all conjunctive conditions set out in the regulation promulgated under the authority of the act which defines the meaning of the phrase "bona fide executive capacity."[8] As the court instructed the jury, these regulations provide (29 C. F. R. [Rev. 1963] § 541.100):

---

[2]Plaintiff's post-trial motion also claimed numerous errors covering procedure, rulings on evidence, and the court's instructions; but none is submitted for review, having been neither assigned nor argued.

[3]52 Stat. 1060, et seq., as amended, 29 USCA, § 201, et seq.

[4]29 USCA, § 207.

[5]Overnight Motor Transp. Co. v. Missel, 316 U. S. 572, 62 S. Ct. 1216, 86 L. ed. 1682.

[6]Anderson v. Federal Cartridge Corp. (8 Cir.) 156 F. (2d) 681.

[7]29 USCA, § 213(a)(1).

[8]Walling v. General Industries Co. 330 U. S. 545, 67 S. Ct. 883, 91 L. ed. 1088; Pakarinen v. Butler Bros. 218 Minn. 496, 16 N. W. (2d) 769.

"The term 'employee employed in a bona fide executive * * * capacity' * * * shall mean any employee:

"(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

"(b) Who customarily and regularly directs the work of two or more other employees therein; and

"(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

"(d) Who customarily and regularly exercises discretionary powers; and

"(e) Who does not devote more than 20 percent, or, in the case of an employee of a retail or service establishment who does not devote as much as 40 percent, of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section: *Provided*, That this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment, or who owns at least a 20-percent interest in the enterprise in which he is employed; and

"(f) Who is compensated for his services on a salary basis at a rate of not less than $80 per week * * * exclusive of board, lodging, or other facilities:

"*Provided*, That an employee who is compensated on a salary basis at a rate of not less than $125 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section."

The only factual dispute concerning the terms of plaintiff's employment was with regard to the number of hours he was required to work

each week. He claimed the agreement was for a 40-hour week; defendant claimed the hours were unlimited and variable. Since the act entitled the employee to 150 percent of his fixed salary computed on an hourly basis for hours worked in excess of 40 hours per week even in the absence of any agreement limiting the hours, prevailing on this fact issue was not essential to plaintiff's recovery.

Upon the undisputed facts, admitted both in the pleadings and at the pretrial conference, plaintiff is entitled to overtime compensation from April 30 to May 27 unless the jury's finding of disloyalty is justified and the disloyalty was of such a nature as to result in a forfeiture of all compensation due or paid. Similarly, unless there is a forfeiture, he is entitled to recover for the period after May 27 through September 8, unless the jury's finding that he was employed in a bona fide executive capacity is sustained by the evidence.

We believe there is abundant evidence to support the latter finding. No purpose would be served in detailing the evidence. We need only to observe that it was conflicting and permitted the jury to conclude that not only did Maurice McCaffrey, the owner of defendant corporation and publisher of its newspaper, hold plaintiff out as a department head, but that plaintiff regarded himself, at the time of his employment, as a part of the management staff. Further, the evidence amply supports a finding that the duties and responsibilities assigned to and performed by plaintiff were consistent with all the conjunctive conditions necessary to establish him as an executive within the contemplation of the regulations.

The difficult task upon this record is to sustain the finding that he breached his duty of loyalty. From a careful reading of the record, it is apparent that defendant was hard put to establish that plaintiff occupied a trusted position as a valued executive and, at the same time, to meet the burden of proving that he was disloyal and unfaithful during every week of his employment. While such an apparent inconsistency is conceivable, in our opinion the evidence is wholly insufficient to sustain the jury's finding.

An employee's duty of honesty and faithfulness to his employer is an implied condition of every contract for personal services. Hlubeck v.

Beeler, 214 Minn. 484, 9 N. W. (2d) 252. Where a breach of this duty causes loss to the employer or is willful and fraudulent or corrupt, and is not only a violation of the contract justifying discharge but "goes to the very root of the subject-matter" of it, a forfeiture of compensation may result. Peterson v. Mayer, 46 Minn. 468, 470, 49 N. W. 245, 246, 13 L. R. A. 72.[9] Since plaintiff's compensation was payable weekly, each week is an entire and separable contract. Misconduct that goes to the essence of the contract must be established for each week worked before his right to compensation can be defeated or the wages previously paid, forfeited. Peterson v. Mayer, *supra.*

Defendant contends that the evidence establishes disloyalty in three respects:

(1) During plaintiff's employment from September 10 to October 1, he also worked about 35 hours each week for Midwest Printing Company, a company under contract with defendant to perform the mechanical work of printing the Herald. Plaintiff admits this double employment and that he did not inform defendant about it before he accepted such work. Further, it was shown that he did not carefully distinguish these hours from those worked for defendant on a record of hours worked for defendant, which he secretly maintained. Even though he delayed until trial waiving his claim for overtime during this period, there is neither any claim nor evidence that this employment was detrimental to defendant or interfered in any way with the duties assigned to plaintiff by defendant. On the contrary, as the foreman of Midwest testified, he accepted this employment to help Midwest print the Herald and to comply with the union rules under which Midwest's employees worked at a time when it was short-handed because its employees were returning to their former jobs at the Star and Tribune after the strike ended. That defendant benefited by plaintiff's double employment is not disputed.

(2) Defendant also claims misconduct because plaintiff kept the secret record of the hours worked; exaggerated the number of hours

---

[9]See, also, 5 Minn. L. Rev. 334; Laube, *The Right of an Employee Discharged for Cause,* 20 Minn. L. Rev. 597.

he in fact worked; and failed to use timecards installed by defendant after an investigation of its wage and hour practices by a Federal agency. This, too, is largely undisputed. When confronted with inaccuracies at trial, plaintiff acknowledged and corrected errors in his record. His refusal to use timecards was not only known to defendant but used as a basis for urging the inference that plaintiff was an executive whose hours of work were fluctuating and unlimited. As such, no record of hours worked is required by Federal authority. While such a secret and inaccurate record may reflect on credibility, this evidence does not support a reasonable inference that plaintiff breached any duty of honesty and faithfulness which would justify the jury's finding, much less support a forfeiture of compensation.

(3) Finally, defendant contends that sometime during July 1962 plaintiff was involved in a conspiracy with fellow employees, Baskin and Schmidt, to "take over the Herald" by talking with other employees and Midwest Printing Company to persuade them to desert the management if Mr. McCaffrey could be "forced" to sell the paper to some unnamed, out-of-state persons. The sum of the testimony favorable to defendant was as the publisher, Mr. McCaffrey, testified: That after he was told by others that such activity had occurred and that Schmidt was fired by his supervisor, Schmidt called upon him and indicated plaintiff was involved; after plaintiff instituted this action, McCaffrey asked his former editor, plaintiff's immediate superior, to investigate and report. Despite defendant's unsuccessful efforts to introduce the editor's report into evidence and its failure to call him as a witness, McCaffrey, without objection, testified that from this hearsay information he came to believe that plaintiff was also involved, and had he realized such to be the case (even though at the time he made no investigation and his editor gave no such indication, and Baskin was not fired), he felt he would have been "forced" to discharge plaintiff "in the interest of the paper." Plaintiff denied any involvement. On cross-examination, after he was asked and admitted prior felony convictions, he admitted he was approached by Schmidt and Baskin but on redirect testified that he immediately reported their intentions to the editor and, following the editor's instructions, he agreed

▮▮▮▮▮▮▮

to attend any meetings of the conspirators and report developments. No meetings were ever held and, from the lengthy testimony on this aspect of the case, it is plain that defendant suffered no loss or damage whatsoever from plaintiff's participation. While the jury could have understandably been misled by the incongruous position which both parties assumed on the issues litigated, by plaintiff's prior criminal record, and by the time devoted to the issue of conspiracy, clearly the evidence falls far short of establishing a conspiracy.

The evidence being insufficient to establish defendant's claim of disloyalty, plaintiff is entitled to recover overtime compensation for the period from April 30 to May 27. Accordingly, we must reverse with directions to enter judgment for plaintiff consistent with the findings sustained by the evidence and the provisions of the applicable Federal statutes.

Reversed with directions.