**TOTAL EQUIPMENT LEASING
CORPORATION, Appellant,**

v.

**LaRUE INVESTMENT CORPORATION
et al., Respondents.**

No. C7–84–604.

Court of Appeals of Minnesota.

Nov. 6, 1984.

James W. Rude, Minneapolis, for appellant.

Robert F. Collins, Minneapolis, for respondents.

Heard, considered, and decided by SEDGWICK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment entered December 13, 1983. A motion for amended findings or a new trial was denied on March 2, 1984. We affirm in part, reverse and remand in part.

## FACTS

In spring of 1979 respondents LaRue Investment Corporation and Carl LaRue, entered into two lease agreements with appellant Total Equipment Leasing Corporation. Each lease involved rental of a two-way radio set, and each included an option to buy the set for $1 at the end of the rental period. Carl LaRue personally guaranteed payment.

LaRue defaulted on both leases. In spring 1982, the parties renegotiated the first lease for equipment installed at the White Birch property, incorporating the past due payments. At LaRue's request, Total Leasing relet the equipment installed on the Sylvan Shores property covered by the second lease to PMA Marketing. The parties did not discuss whether LaRue remained liable under the new lease. The PMA lease made no reference to the earlier lease to LaRue. A PMA principal personally guaranteed payment. Total Leasing retained a security interest in the equipment.

By August 1982 LaRue and PMA had both defaulted on their respective leases. Total Leasing notified LaRue of the default by PMA. In September 1982, Northland Communications Company, acting as Total Leasing's agent, repossessed both radio sets.

In October 1982, Total Leasing notified LaRue in writing of the amounts "immediately due and payable" on both leases. Total Leasing sought bids from three potential buyers, but only Northland submitted bids for the equipment. On November 12, 1982 Total Leasing wrote again, informing LaRue that Northland had bid $3,190 for the equipment at White Birch, and $3,470 for the equipment at Sylvan Shores covered by the PMA lease. Appellant warned, "unless we hear from you we intend to accept their bid." No sale date was listed.

LaRue protested the proposed selling prices by a letter dated November 15, 1982. The letter said that the offered price of $3,190 was "ridiculously low for equipment that was purchased for $23,000," and that "a discounted price of $12,000 is more in the ball park."

On November 19, 1982, Total Leasing sold to Northland the equipment at White Birch for $3,190, and that at Sylvan Shores for $3,470. It then sought a judgment against LaRue for the difference between the sale price of each set and the amount owing under each lease at the time of trial: $22,739.83 and $15,143.24 for the White Birch lease and Sylvan Shores lease respectively.

At trial the parties stipulated that Article 9 of the UCC applied. The trial court found that Total Leasing's notices of sale to LaRue on November 12, 1982, were not reasonable within the meaning of Minn. Stat. § 336.9–504 (1982), and that Total Leasing failed to prove that fair prices were received for the equipment.

The trial court also found that the parties reached an accord and satisfaction, with respect to the equipment under the second lease, by virtue of Total Leasing's sale of the equipment to PMA. Lastly, the trial court found that Total Leasing's conduct in repossessing and selling the equipment constituted acceptance under Minn. Stat. § 336.9–505 (1982) and that Total Leasing was not entitled to damages.

### ISSUES

1. Did the trial court err in finding Total Leasing's notices of sale to LaRue were not reasonable within the meaning of Minn. Stat. § 336.9–504?

2. Did the trial court err in finding the parties entered into an accord and satisfaction?

3. Did the trial court err in finding Total Leasing's actions in repossessing and reselling the equipment constituted acceptance under Minn.Stat. § 336.9–505(2)?

4. Did the trial court err in finding Total Leasing is not entitled to damages?

### ANALYSIS

1. *Chemlease Worldwide, Inc. v. Brace, Inc.*, 338 N.W.2d 428 (Minn.1983), is the most recent review of the issue of reasonableness of notice. The court said:

> The rule for determining whether notification under U.C.C. § 9–504(3) is reasonable is whether the notice was sent in sufficient time to enable those entitled to notice to take appropriate steps to protect their interest in the collateral.

*Chemlease*, at 434.

Total Leasing relies on *Chemlease* to support its position that its notice, mailed 7 days before the sale, is commercially rea-

sonable. The *Chemlease* court held that "in the absence of contrary evidence, a mailing 10 days prior to the sale date does not per se appear commercially unreasonable." *Id.* at 434.

However, *Chemlease* is distinguishable in that the proposed sale date was included in the notice. Here, no sale date was given. We see no reason to expand *Chemlease.*

2. Total Leasing claims that the trial court erred in finding the parties entered into an accord and satisfaction of the Sylvan Shores lease. It contends PMA is a sublessee of LaRue.

In *Don Kral Inc. v. Lindstrom*, 286 Minn. 37, 173 N.W.2d 921 (1970), the court recognized that an enforceable accord and satisfaction arises when a creditor accepts the debtor's offer to provide a different performance.

The critical issue is the intent of the parties. If the parties objectively intended the new promise to constitute full settlement of the original claim, the defense of accord and satisfaction is established. *Larsen v. Erickson*, 549 F.2d 1136 (8th Cir.1977).

The burden of establishing the accord and satisfaction is on the debtor, who must prove there was an express agreement that the [new promise] was taken absolutely as payment. *Kral*, 286 Minn. at 41, 173 N.W.2d at 924. Absent proof of an express agreement, the court will look to the conduct of the parties. If the parties fully performed their duties pursuant to the alleged accord, the court will presume a satisfaction.

LaRue argues that an accord and satisfaction was reached when Total Leasing accepted PMA as a substitute for LaRue by negotiating a new lease with PMA with different terms and conditions from LaRue's lease.

There was no discussion between LaRue and Total Leasing as to LaRue's continued liability under the new lease and the lease agreement between PMA and Total Leasing does not mention a sublease interest.

We find the trial court did not err in finding an accord and satisfaction. The question of accord and satisfaction is one of fact to be determined by the court or jury. *Bloomer v. Bloomer*, 289 Minn. 481, 185 N.W.2d 520 (1971). The function of this court is not to weigh the evidence as if trying the matter de novo, but to determine from an examination of the record if the evidence as a whole sustains the trial court's findings. Since it does, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary. *Kral*, 286 Minn. at 42, 173 N.W.2d at 924.

3. The trial court found that because Total Leasing took possession of the White Birch lease equipment and arranged to resell it before it sent its notice of sale, it exercised such dominion and control over the equipment that "acceptance" under Minn.Stat. § 336.9–505(2) should be implied as a matter of law. Minn.Stat. § 336.9–505(2) applies where the creditor elects to take the collateral in satisfaction of the debt, and is inapplicable to the present facts.

4. The damages in this case are governed by Minn.Stat. § 336.9–504. When a secured party fails to prove the commercial reasonableness of the sale of collateral, that party has the burden of proving the fair market value of the collateral is less than the indebtedness on the collateral. *Chemlease*, 338 N.W.2d at 436.

Here, Total Leasing alleged $3,190 was the fair market value for the equipment. LaRue by its November 12, 1982 letter estimated the fair market value of the equipment covered by the White Birch lease to be $12,000. Neither side presented nonparty expert testimony of the market value of the equipment at time of disposition. Therefore, the burden of proving its entitlement to the deficiency remains on Total Leasing.

Although Total Leasing failed to meet its burden of proof on the fair market

value of the equipment, the burden of persuasion did not shift to LaRue. However, LaRue concedes the fair market value of the equipment installed at White Birch is $12,000. Under these circumstances, Total Leasing is entitled to the difference between the amount of the original indebtedness of the equipment under the White Birch lease and $12,000.

## DECISION

We affirm the trial court's decision finding the notice of sale and sale of the White Birch equipment unreasonable, and finding an accord and satisfaction with respect to the Sylvan Shores lease. We reverse the trial court's finding of an acceptance under Minn.Stat. § 336.9–505(2). With respect to the White Birch lease we remand for entry of a deficiency judgment in favor of Total Leasing for $7,549.83.

Affirmed in part, reversed and remanded in part.