LADWIG & LADWIG, INC., and Floyd Ladwig, individually, Appellants,

v.

ORLIN LADWIG, INC., and Orlin Ladwig, individually, Respondents.

No. C1–85–155.

Court of Appeals of Minnesota.

Aug. 13, 1985.

Thomas W. Lies, St. Cloud, for appellants.

Douglas P. Anderson, Little Falls, for respondents.

Considered and decided by LESLIE, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

FOLEY, Judge.

Ladwig & Ladwig, Inc. and Floyd Ladwig (plaintiffs/appellants) appeal the trial court's ruling that neither Orlin Ladwig, Inc. nor Orlin Ladwig individually (defend-

ants/respondents) owe them any money, since the defendant corporation paid its full obligation to plaintiffs under the corporate "spin-off" agreement. We affirm.

## FACTS

For some years prior to 1980, Floyd Ladwig and Orlin Ladwig farmed in Stearns County under the name Ladwig & Ladwig, Inc. Each owned 159 shares of the corporation and their wives each owned one share, for a total of 320 shares.

The corporation consulted attorneys in 1980 because of disagreements between the parties which proved insurmountable. They decided to create a second and new corporation, to be known as Orlin Ladwig, Inc., by splitting the existing corporation. This "spin-off" was to be accomplished pursuant to Section 335 of the Internal Revenue Code, as amended.

The shareholders, lawyers and accountants all intended a full, final and complete settlement of all business dealings between the brothers. The goal was to create two separate corporations which would be completely independent, with no obligations nor debts remaining between them. As part of the "spin-off," the corporate accountant required full and complete disclosure of all corporate assets and liabilities.

For several years before 1980, Floyd had handled all corporate finances. On August 26, 1980, without Orlin's knowledge, Floyd, on behalf of Ladwig & Ladwig, Inc., made an Agriculture Stabilization and Conservation Service (ASCS) loan using 6861 bushels of wheat as collateral for a loan of $19,285.45. On December 23, 1980, again without Orlin's knowledge, Floyd, on behalf of Ladwig & Ladwig, Inc., made an ASCS loan using 22,495 bushels of corn as collateral for a loan of $43,729.20.

From late 1980 until February 27, 1981, Floyd, without Orlin's knowledge, sold all the wheat and corn which was secured by the ASCS loans, except one bin of corn at Orlin's farm.

Neither Floyd nor the corporation received permission from ASCS before selling the wheat and corn which was security for the loans.

February 16, 1981 was the date set to complete the corporate "spin-off" and close the sale. The assets of the old corporation were to be transferred to Orlin's new corporation for $118,388.

Floyd did not disclose to the corporate accountants or corporate attorneys the existence of the ASCS loans against wheat and corn, at least until the date of the closing. Neither did Floyd inform them that all the wheat and most of the corn had been sold before February 16, 1981, and that the ASCS loans had not been repaid from the sales of the grain.

Floyd did not tell anyone on February 16, 1981 that he expected a substantial shortfall (still owed to ASCS) when the remaining corn from the bin at Orlin's farm was sold.

On April 9, 1981 Orlin Ladwig, Inc. paid $118,388 to Ladwig & Ladwig, Inc. as the full, final and complete settlement contemplated by all parties, the certified public accountant and the attorneys.

In May 1983, Floyd sued Orlin demanding that he pay one half of the debt owed to the ASCS and alleging that Orlin had converted crops used as collateral for the loans. The trial court ruled in favor of Orlin.

There was no motion for new trial. Appellants only disputed that the evidence sustained findings number 22 and 24.[1]

## ISSUES

1. Did the trial court err in ruling respondents owed no money to appellants

---

**1.** 22. The parties effectuated a complete accord and satisfaction on 16 February 1981 which was finalized, with minor adjustments, on 9 April 1981 by the payment of the necessary settlement funds ...

24. If the ASCS loans had been disclosed, Orlin Ladwig, Inc. could have assumed those loans and deducted the amount of those loans from the $118,388 settlement figure paid to Ladwig & Ladwig, Inc. with the net result still being that the total obligation owed by Orlin Ladwig, Inc. in this corporate spin-off remaining at $118,388.

because the parties established an accord and satisfaction under which all obligations were paid?

2. Would equity alone justify relief in this case?

## ANALYSIS

■ 1. Orlin contends that since appellants did not file a cost bond under Minn.R. Civ.App.P. 107, this appeal should be dismissed. Appeal is not effective unless notice of appeal and appeal bond are filed with the clerk. *Dempsey v. Meighen,* 257 Minn. 576, 102 N.W.2d 825 (1960). However, if no prejudice is shown, the court may relieve the appellant of default. *Id.* Since no prejudice has been shown here, appellants are relieved of default.

■ The trial court found that Floyd owed a fiduciary duty to Ladwig & Ladwig, Inc. and to Orlin to disclose the existence of the ASCS loans and to disclose the fact that the grain securing these loans had been sold without repaying the loans.

The court further found that there was no mutual mistake; instead, Floyd deliberately failed to disclose the loan information. Moreover, the court found that if the loans had been disclosed, Orlin Ladwig, Inc. could have assumed them and deducted the amount from the $118,388 settlement figure paid to Ladwig & Ladwig, Inc. In that case, the total obligation owed by Orlin Ladwig, Inc. would have remained $118,388.

The court concluded that the deal on February 16, 1981 established an accord and satisfaction of the parties' business dealings; hence defendant corporation paid its full obligation.

An accord and satisfaction acts to discharge a contract or cause of action. It is an executed contract, and may be expressed or implied from circumstances which clearly and unequivocally indicate the intention of the parties. *Acton Construction Co., Inc. v. State,* 363 N.W.2d 130 (Minn.Ct.App.1983).

■ An enforceable accord and satisfaction arises when a creditor accepts the debtor's offer to provide a different performance. *Total Equipment Leasing Corp. v. LaRue Investment Corp.,* 357 N.W.2d 347, 350 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Feb. 19, 1985).

The critical issue is the intent of the parties. If the parties objectively intended the new promise to constitute full settlement of the original claim, the defense of accord and satisfaction is established. *Id.*

■ Absent proof of an express agreement, the court will look to the conduct of the parties. If the parties fully performed their duties pursuant to the alleged accord, the court will presume a satisfaction. *Id.*

■ Here, the parties agreed that $118,-388 would satisfy Orlin's complete obligation and thereby accomplish a successful "spin-off" corporation. Only Floyd had complete knowledge of the ASCS loan situation and the outstanding debt obligation. At the time the corporate split was accomplished, he led Orlin, the lawyers and accountant to believe that the corn in Orlin's bin would satisfy the obligation to ASCS. He accepted the check for $118,388. The court could easily have found that acceptance of the check with full knowledge of the loan situation, constituted an accord and satisfaction.

■ 2. Finally, it is clear that in all respects, the equities favor the respondents. In fact, equity alone justifies denial of relief under these facts where appellant Floyd Ladwig blatantly withheld information about the two ASCS loans. As the Minnesota Supreme Court said:

The case is one for the application of the rule that if a party conceals a fact material to the transaction and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated. *Thomas v. Murphy,* 87 Minn. 358, 91 N.W. 1097. The rule has also been stated as follows: "Failure to correct another's delusion is obviously fraudulent if the circumstances are such that the fraud-feasor's very silence reasonably caused the misapprehension, or if he has in any way contributed to the

delusion." * * * It was said in *C.H. Young Co. v. Springer*, 113 Minn. 382, 129 N.W. 773, that a contract may be avoided by one of the parties for his own mistake of fact when such mistake was caused by the inequitable conduct of, or when known to and wrongfully acted upon or taken advantage of by, the other contracting party.'

*Norris v. Cohen*, 223 Minn. 471, 478, 27 N.W.2d 277, 281 (1947), (quoting *King v. International Lumber Co.*, 156 Minn. 494, 496, 195 N.W. 450, 451 (1923)).

The trial court properly ruled that appellants are not indebted to respondents. There was no error.

## DECISION
We affirm the decision of the trial court.