**Dale J. BECKER, et al., Appellants,**

v.

**F & H RESTAURANT GROUP, INC., et al., Respondents.**

No. C2-87-55.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Thomas M. Neuville, Grundhoefer & Neuville, P.A., Northfield, for appellants.

Loren Gross, Christian and Gross, Minneapolis, for respondents.

Heard, considered and decided by WOZNIAK, P.J., and PARKER and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This is an appeal from a judgment of the district court that appellants are not entitled to overtime pay and that promissory notes given to the appellants constituted an accord and satisfaction of the appellants' rights to certain payments under the terms of an employment agreement. We affirm.

## FACTS

Appellants Dale Becker and Joni Hartley, who were experienced in the liquor and bar business, orally agreed to invest $10,000 and work for a proposed restaurant and bar business of the Hladys who were experienced only in food preparation and restaurant operation. Becker and Hartley each would receive 100 shares of the F & H Restaurant Group, Inc., a Minnesota corporation largely financed by the Hladys' personal assets and pledges. They also would each receive $1,200 in monthly salary. The parties agreed that Hartley and Becker could withdraw from the corporation within six months for any reason. They also agreed that the corporation could terminate their employment within six months and that the F & H Restaurant Group, Inc. could repurchase their 200 shares in the corporation.

Hartley and Becker were primarily responsible for establishing and operating the bar. When the restaurant and bar opened for business, Hartley and Becker each paid $10,000 to the F & H Restaurant Group, Inc. but did not receive certificates for their 200 shares in the corporation.

Hartley and Becker did not have any authority to write checks, pay bills, or incur corporate debts. However, they were responsible for most of the details in operating the liquor part of the restaurant. They attended planning and strategy sessions regarding the operation of the business, and they regularly reviewed employee timecards and performed bookkeeping duties at the end of the business day.

Several months later Gerald Hlady told Hartley and Becker the business arrangement was not working out and that their employment with the corporation was terminated. He informed them that the corporation would offer to repurchase their 100 shares in the corporation for a $5,000 cash payment and a $5,000 promissory note.

Hartley and Becker did not respond or object to the form of payment. Hartley and Becker received written notices of termination containing an offer to repurchase their shares for $5,000 cash and a promissory note for $5,000 with twelve percent interest, payable upon demand in twenty-four months. When Hartley and Becker later met with the Hladys, they each received a check for $5,000 and a promissory note for the remaining $5,000. They signed their 200 shares over to the corporation, cashed the checks and did not return or object to the promissory notes.

Although the notes did not require monthly payments, Gerald Hlady sent checks of $235 to both Hartley and Becker. The checks were returned by Hartley's and Becker's attorney who indicated that Hartley and Becker never accepted the promissory notes in lieu of cash payment for their shares.

Hartley and Becker sued F & H Restaurant Group, Inc. and Gerald Hlady claiming they did not accept the promissory notes as payment for their corporate shares. They also alleged that the repurchase of the shares was improper because the repurchase was not authorized by the corporation's board of directors and that they were entitled to overtime wages and liquidated damages for the corporation's alleged failure to pay them for overtime work. Alternatively, Hartley and Becker sought damages on the grounds that Gerald Hlady and the corporation were unjustly enriched by Hartley's and Becker's work on behalf of the corporation.

The district court concluded Hartley and Becker purchased a ten percent share in the F & H Restaurant Group, Inc. intending to become part owners and that they were not entitled to overtime pay because their status as "either executive or administrative personnel" exempted them from the overtime pay provisions of the Minnesota Fair Labor Standards Act. The court concluded the promissory notes were both given and received in good faith and "in full accord and satisfaction of the termination notice dated April 22, 1985."

The district court denied Hartley's and Becker's motion for amended findings and conclusions, a new trial, and an opportunity to present further testimony. Amended judgment was entered October 2, 1986. Hartley and Becker appeal from that judgment.

### ISSUES

1. Did the trial court err by concluding the appellants are not entitled to overtime compensation, minimum wages, and other benefits because they are not "employees" within the meaning of the Minnesota Fair Labor Standards Act?

2. Did the trial court err by concluding the tender and receipt of the promissory notes constitutes an accord and satisfaction of the parties' stock repurchase agreement?

3. Is Gerald Hlady the "alter ego" of F & H Restaurant Group, Inc. and therefore personally liable for payment of overtime compensation and corporate stock repurchases?

### ANALYSIS

In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * *. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01.

A trial court's findings of fact must be upheld unless "clearly erroneous." * * * On appeal, this court must view the evidence in the light most favorable to the prevailing party. The trial court's findings will not be reversed if the evidence fairly and reasonably tends to support them.

*Schalow v. Mason,* 370 N.W.2d 475, 476 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Sept. 13, 1985) (citations omitted).

### 1. Overtime and Wage Compensation Claims

■ The Minnesota Fair Labor Standards Act establishes minimum wage and overtime compensation standards. *See* Minn.Stat. §§ 177.21–.35 (1984). Employers are required to pay "employees" both minimum wages and overtime compensation for workweeks longer than forty-eight hours. *See* Minn.Stat. §§ 177.24, subd. 1, 177.25, subd. 1. Some employees are exempted from the statutory wage and overtime compensation provisions of the act. An individual is not an "employee" within the meaning of the act if the individual is "employed in a bona fide executive, administrative, or professional capacity." *Id.* § 177.23, subd. 7(6). According to the applicable administrative rules, an individual's "primary" duties determine whether the individual is exempt as an "executive, administrative, or professional" employee. Only where the employee's *primary* duties meet all the criteria under a par-

ticular test may the employer consider the employee to be exempt from the overtime wage provisions.

Minn.R. 5200.0180, subp. 1 (1983) (emphasis added).

[T]he term "manage" means to control and direct the business operations of a given enterprise, department, or branch establishment. Duties involved in managing must involve the making of decisions and the issuance of directions to other employees which involve skill and judgment. The term includes employees that act *primarily and principally in a directive capacity* as opposed to those who primarily do the actual work.

Minn.R. 5200.0180, subp. 2 (1983) (emphasis added).

■ The exempt status of an employee depends in part upon whether the employee exercises "discretion as to company policy or procedure or commit[s] the employer on matters of substantial importance." *See* Minn.R. 5200.0180, subp. 3. The employer has the burden of proving an employee is exempt from the act's overtime compensation provisions. *See Nelson v. Master Vaccine, Inc.*, 382 N.W.2d 261, 264 (Minn.Ct. App.1986) (applying similar provisions of analogous federal law); *see also Marsh v. Minneapolis Herald, Inc.*, 270 Minn. 443, 445, 134 N.W.2d 18, 20 (1965).

■ The district court was correct in concluding Hartley and Becker were exempt from the overtime compensation provisions of the Fair Labor Standards Act because "the evidence fairly and reasonably tends to support" the court's findings that Hartley's and Becker's duties were primarily administrative or executive. *See Schalow*, 370 N.W.2d at 476; *see also* Minn.R. 5200.0190, subps. 1, 2 (tests for determining employees' "executive" status); Minn.R. 5200.0200, subps. 1, 2 (tests for determining employees' "administrative" status).

Hartley and Becker were employed by the corporation primarily for the purposes of establishing and operating the bar area of the restaurant. Hartley and Becker spent nearly all of their time performing administrative or managerial duties and they were responsible for operating the bar. They recommended purchases of liquor, made recommendations about hiring prospective employees, and fired at least one employee whose work was inadequate. They also were involved in all management discussions about the general operation of the restaurant and bar, and they had access to all information about the operation other than communications with the bank which Gerald Hlady handled personally. Neither Hartley nor Becker punched a time clock, although other employees were required to, and neither had established hours. Both Hartley and Becker stated at trial that they told other people they were owners and managers of the bar.

### 2. Accord and Satisfaction

An "accord and satisfaction" is a method of discharging a contract, the accord being a contract between the creditor and the debtor for settlement of the claim by some performance other than that which is due, and the satisfaction being the execution or performance of the accord. An enforceable accord and satisfaction may arise when a creditor accepts part payment of an unliquidated debt which the debtor tenders in full satisfaction of the debt, or when the debtor offers to pay a definite amount or provide a different performance in settlement of a liquidated or undisputed debt and the creditor accepts that offer. An executory accord is an agreement for the future discharge of an existing claim by a substituted performance.

* * * If the accord constitutes a binding contract and it is fully performed, the original liability is discharged.

*Don Kral Inc. v. Lindstrom*, 286 Minn. 37, 39, 173 N.W.2d 921, 923 (1970) (citations omitted). An agreement constituting an accord and satisfaction need not be expressed.

Absent proof of an express agreement, the court will look to the conduct of the parties. If the parties fully performed their duties pursuant to the alleged accord, the court will presume a satisfaction.

*Total Equipment Leasing Corp. v. LaRue Investment Corp.,* 357 N.W.2d 347, 350 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 19, 1985).

 Neither Hartley nor Becker objected when they initially were told the corporation probably would offer promissory notes in lieu of cash. They accepted the checks and promissory notes at the May 1985 meeting when they signed their shares back to the corporation. They cashed their checks and did not object to the promissory notes until several weeks later. The trial court was correct in concluding the notes were given and received in good faith and in full accord and satisfaction of the parties' rights.

### *3. Personal Liability*

Hartley and Becker argue that Gerald Hlady is the "alter ego" of the F & H Restaurant Group, Inc. and therefore liable for payment of their claims against the corporation. Finding an accord and satisfaction of the parties' rights under the termination agreement obviates the necessity of addressing this issue.

### **DECISION**

Hartley and Becker are not entitled to overtime compensation because they were not "employees" within the meaning of the Minnesota Fair Labor Standards Act. The tender and receipt of the promissory notes constituted an accord and satisfaction of the parties' stock repurchase agreement.

Affirmed.