**David H. STIFF, Respondent,**

v.

**ASSOCIATED SEWING SUPPLY COMPANY, et al., petitioners, Appellants.**

No. C2–87–2128.

Supreme Court of Minnesota.

March 10, 1989.

Allen H. Gibas, Minneapolis, for appellant.

Kenneth E. Keate, St. Paul, for respondent.

John F. Murphy, Mark S. Anderson, Minnesota Chamber of Commerce and Industry, St. Paul, amicus.

KELLEY, Justice.

Appellant Associated Sewing Supply Company (ASSC), a Minnesota corporation solely owned by Russell J. Hamilton, in 1975 hired David Stiff as a repairman and salesperson. In the same year it initially hired as a salesman Floyd Waller, who later, in 1977 was considered also to be the manager of ASSC. Both left the company's employment in April 1982. Shortly thereafter, each commenced an action to collect alleged unpaid commissions claimed to be owed to him. Following a two and one-half week bench trial, the trial judge made comprehensive findings of fact that each employee had embezzled company funds and had conspired to dismantle ASSC's business record practices, and that each had consequently forfeited any claims to commissions allegedly owed to him.[1] The court of appeals, in an unpublished opinion [1988 WL 56380] reversed and remanded for retrial. Because we conclude the court of appeals exceeded its scope of review and erroneously concluded that in this case the common law rule of forfeiture was superseded by Minn.Stat. § 181.79 (1978), we reverse and remand to the trial court for entry of judgment.

From the trial court's extensive findings of fact, we extract and set forth only those facts we deem to be germane to the issues before us on appeal. In 1977, Waller became nominal manager of ASSC's store, and as such along with other duties, he was supposedly responsible for overseeing proper maintenance of all of ASSC's books and records. Notwithstanding Waller's nominal designation as manager, in all material respects both he and Stiff jointly or interchangeably performed the duties generally considered to be managerial, such as opening and closing the establishment, supervising other employees, ordering inventory and supplies, computing and paying commissions, banking, and fulfilling similar normal managerial duties. In the five years this arrangement prevailed—and particularly after 1980—the two had managed to systematically dismantle all of the records of the company by (a) discontinuing use of a purchase journal and inventory system, (b) discontinuing the company's established procedure and practice of daily depositing in banks funds received from sales, (c) discontinuing the procedure of recording all sales on sales register receipts, (d) discontinuing the practice of utilizing a service record book (or else destroying the existing entries in the book), and (e) discontinuing the company's prac-

---

1. Stiff's and Waller's cases were consolidated for trial. Following denial of the employees' post-trial motions, only Stiff appealed. Since Waller did not appeal, the only case that was before the court of appeals and is now before this court is Stiff's.

tice of balancing daily cash sheets against bank deposits. These collective actions of gross mismanagement, in which both Stiff and Waller had a participatory share, resulted in (a) substantial cash shortages in the business, (b) a pattern of cash deposits which reflected intentional manipulation of, or tampering with, the company's cash, (c) computation and issuance of commission checks to themselves, (d) nonpayment of tax obligations to governmental units when due, (e) a milieu which permitted Stiff, upon his resignation, to be able to assert undocumented claims for alleged unpaid commissions,[2] and (f) Stiff's systematic misappropriation to his own personal use of company moneys paid by customers on outside sales and service calls.

The trial court likewise found Stiff's misconduct and participation in the mismanagement had resulted in depriving ASSC of that for which it had employed Stiff, or, to paraphrase, what commissions, if any, may have been owed to Stiff were unascertainable simply because his misconduct and misappropriations and the subsequent coverup had made it so. Therefore, the trial court concluded, he had failed to prove the commissions "earned," and, additionally, by his conduct had forfeited any right to commissions allegedly due him.

█ The court of appeals reversed and remanded basically because, in its opinion, the trial court had failed to make certain findings it considered to be appropriate. In so doing, in our opinion, it usurped the function the law places in the trial court, and exceeded the proper scope of review that governs an appellate court when reviewing challenged trial court findings of fact. When additional findings are necessary to support a trial court's conclusion on a disputed issue, an appellate court, of course, may remand for additional findings. But, ordinarily, an appellate court's limited scope of review circumscribes additional fact finding by it, and, as well, remand for different fact findings supporting different conclusions. Yet, it appears to us that in

this case that is what the court of appeals proceeded to do.

█ Findings of fact made by a trial court will not be set aside unless clearly erroneous. Furthermore, due regard will be given to the opportunity of the trial court to judge the credibility of the witnesses. Minn.R.Civ.P. 52.01. An appellate court's deference to the trial court's findings of fact is based on the judge having had the advantage of fully hearing the testimony, observing the demeanor of the witnesses as they testify, and acquiring a thorough familiarity with all of the circumstances of the case. *See, e.g., Sigurdson v. Isanti County,* 386 N.W.2d 715, 721 (Minn. 1986). If the trial court's findings of fact are not clearly erroneous, they are to be affirmed. An appellate court exceeds its proper scope of review when it bases its conclusions on its own interpretation of the evidence and, in effect tries the issues anew and substitutes its own findings for those of the trial judge. *Sefkow v. Sefkow,* 427 N.W.2d 203, 210 (Minn.1988). That is particularly true, when, as here, the trial court's findings are so dependent on its evaluation of the credibility of the witnesses. *Peterson v. Johnston,* 254 N.W.2d 360, 362 (Minn.1977).

█ With these fundamentals in mind, we turn to examine the trial court findings. Though we have carefully combed the record, we consider it unnecessary to iterate item by item evidence that supports the trial court's findings. To be sure, much of the evidence was conflicting or contested. To resolve those conflicting and contested assertions as well as the often contradictory testimony, particularly of Stiff, but also of Waller, required that the trial judge make a number of essential credibility evaluations. After affording to those evaluations the deference to which they are entitled, we find more than sufficient credible evidence in the record to support each of the crucial findings made by the trial court. Although the record also contains testimony which, if believed, would support differ-

---

2. The trial court understandably afforded little weight to that assertion in the light of the fact that Stiff provided the sole support for a family

of five and the absence of evidence of demand for the alleged unpaid commissions until just before quitting his job and instituting this suit.

ent findings of fact more favorable to the respondent, when the record contains credible evidence to support the fact findings and those findings support the trial court's conclusion, we may not reverse just because we might have found the facts differently in the first instance. *Caroga Realty Co. v. Tapper,* 274·Minn. 164, 169–70, 143 N.W.2d 215, 220 (1966).

The trial court's findings of gross misconduct clearly support its conclusion that respondent Stiff had forfeited any claim he might have had for alleged unpaid commissions. The forfeiture doctrine of the common law is one of long standing in Minnesota. It was clearly stated nearly a century ago. "Indeed, if there is any case of nonperformance of an entire contract which should prevent recovery, it is where a servant has been habitually embezzling his master's money which came into his hands in the course of his employment; for, in such cases, not only is the breach the result of positive dishonesty, but it goes to the very root of the subject-matter of the contract of service." *Peterson v. Mayer,* 46 Minn. 468, 470, 49 N.W. 245, 246 (1891). The court of appeals was under the misapprehension that for the forfeiture doctrine to be applicable, it is necessary that the employer prove the amount stolen by the employee is the equivalent of his forfeited wages. Clearly, that is not so. "To allow the dishonest servant to recover the value of his services, less what the master can show by direct and positive proof (often impossible) he had stolen, would neither subserve the ends of justice nor tend to promote common honesty." *Id.* Every employment contract encompasses implied duties of honesty and loyalty, which if breached by the employee, results in the employer owing the employee nothing. *Marsh v. Minneapolis Herald, Inc.,* 270 Minn. 443, 447–48, 134 N.W.2d 18, 22 (1965). Since the trial court made findings which, in effect established that Stiff had breached both implied duties, its conclusion that the doctrine of forfeiture was applicable was clearly correct unless that common law doctrine has now been superseded by statute.

Respondent contends, and the court of appeals agreed, that Minn.Stat. § 181.79 superseded the "old forfeiture doctrine." [3] We disagree. The statute is only applicable to deductions taken from *earned* wages or commissions. The statute applies when a disputed deduction is attempted to be offset against an undisputed wage or earnings. In this case it is the earnings, themselves, which are in dispute. Respondent had the burden of proving the earnings to which he claimed to be entitled but failed to do so primarily because the relevant records did not exist substantially because of his participatory misconduct. Though not directly on point, *Meyer v. Mason Publishing Co.,* 372 N.W.2d 403 (Minn.App. 1985) demonstrates that the employer's statutory liability is limited to those wages or commissions "actually earned and unpaid." In this case respondent failed to establish the amount of commissions earned and unpaid. The trial court found that Stiff had skimmed cash, appropriated the company's customers, and had participated in dismantling the company's business records. In those circumstances, he never earned his commissions during the years in question. *See Peterson,* 46 Minn. at 469–70, 49 N.W. at 246.

Reversed and remanded to the trial court for reinstatement of the judgment.

---

**3.** During the period relevant to Stiff's claim (1980–82) Minn.Stat. § 181.79 (1978) read as follows:

No employer shall make any deduction from the wages due or earned by any employee, who is not an independent contractor, for lost or stolen property, damage to property, or to recover any other claimed indebtedness running from employee to employer, unless the employee, after the loss has occurred or the claimed indebtedness and has arisen, voluntarily authorizes the employer in writing to make the deduction or unless the employee is held liable in a court of competent jurisdiction for the loss or the indebtedness.
Minn.Stat. § 181.79, subd. 1 (1978).