*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0911**

Paige J. Wentzel, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed March 23, 2015
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-14-2229

Daniel J. Koewler, Charles A. Ramsay, Ramsay Law Firm, PLLC, Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeanine M. Putnam, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Toussaint, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**UNPUBLISHED OPINION**

**RODENBERG**, Judge

Appellant challenges the district court's finding that appellant consented to the search of her breath, arguing that her breath sample was obtained in violation of her constitutional right against unreasonable searches and seizures. We affirm.

## FACTS

In the early morning hours of January 11, 2014, Orono Police Officer Brent Rasmussen stopped a speeding vehicle driven by appellant Paige Julieanna Wentzel. Officer Rasmussen approached the vehicle and observed that appellant displayed signs of intoxication. After field sobriety testing and a preliminary breath test resulted in a reading over the legal limit, Officer Rasmussen arrested appellant for driving while intoxicated. Appellant was handcuffed, placed in the back of Officer Rasmussen's squad car, and transported to the Orono police station.

At the police station, Officer Rasmussen read appellant the implied consent advisory. When asked whether she understood, appellant responded, "Yeah." Asked whether she wanted to contact an attorney, appellant said, "No" twice, then said, "Maybe," and finally said, "I don't know." Officer Rasmussen told appellant that he needed a "100 percent certain either yes or no." Appellant agonized over the decision about whether to contact an attorney and became upset. Officer Rasmussen patiently explained to appellant that, if she decided to contact an attorney, she could obtain legal advice concerning her situation and whether to consent to the testing of her breath.

Officer Rasmussen also went through a detailed explanation of the implied-consent procedure with appellant, answering all of the questions she posed to him.[1]

Twelve minutes after Officer Rasmussen read the implied consent advisory, appellant decided to call her father, a retired attorney. Officer Rasmussen allowed appellant to speak with her father for approximately 23 minutes. During this conversation, appellant is heard saying "scared," and "no, I'm just scared!" Apparently upset, appellant can be heard telling her father, "[T]hey said that I get a call . . . so I thought I'd call you since you were a lawyer." At the end of the conversation, Officer Rasmussen asked, "Okay, Paige, are you done with your attorney time?" Appellant responded, "I mean, yeah, half of an attorney." Officer Rasmussen then asked, "Will you take the breath test?" and appellant responded, "Sure." Appellant provided an adequate breath sample that revealed an alcohol concentration of .19. Appellant's driver's license was revoked pursuant to Minnesota's implied-consent law. Appellant sought reinstatement of her driving privileges by petition.

At the implied-consent hearing, appellant testified that, when the officer read the portion of the implied consent advisory indicating that "Minnesota law requires you to take a test," she thought that she had to take a test and felt as if she "had no choice." On cross-examination the prosecutor asked appellant what she understood "paragraph 4" (reading, "You must make the decision on your own. . . . You must make your decision within a reasonable period of time") of the implied consent advisory to mean, and

---

[1] The recording of the process was received in evidence as exhibit one and is part of the record on appeal.

appellant responded, "That I have to decide whether or not to take the test . . . and within a certain amount of time." When asked, "So it would be your decision whether or not to take the test; correct?" appellant responded, "Correct." Finally, appellant testified that she understood that if she refused to take a breath or urine test she would be arrested but did not believe that the police were going to "hold [her] down and take [her] blood."

The district court sustained the revocation of appellant's driver's license, finding that her consent to the breath test was voluntary. This appeal followed.

# D E C I S I O N

Any person who drives a vehicle within the state of Minnesota impliedly consents to a chemical test for the purposes of determining the presence of alcohol. Minn. Stat. §169A.51, subd. 1(b) (2014). If an officer has probable cause to believe that a person has driven a motor vehicle while under the influence of alcohol, and arrests that driver under Minn. Stat. § 169A.20 (2014) (driving while impaired), the officer must inform the driver that Minnesota law requires a sample to determine whether that person is under the influence and that refusal is a crime. Minn. Stat. § 169A.51, subd. 2 (2014).

The Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution protect a person's right to be free from unreasonable searches and seizures, which include the right to be free from an unreasonable search and seizure of one's breath. *State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 564 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). A warrantless search is generally unreasonable. *Id.* Consent is an exception to the warrant

4

requirement, and the fact that refusal is a crime does not invalidate otherwise valid consent. *Brooks*, 838 N.W.2d at 568, 570. That the encounter between the driver and the officer is uncomfortable does not invalidate otherwise valid consent. *Id.* at 569. However, an individual does not validly consent by "simply acquiescing to a claim of lawful authority." *Id.*; *see also State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994) (holding that whether a person gave valid consent or was coerced turns on "whether a reasonable person would have felt free to decline the officer's requests" (quotation omitted)). It is the state's burden to "show by a preponderance of the evidence that consent was given freely and voluntarily." *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011).

Appellant argues that the district court's determination that appellant voluntarily consented to testing of her breath should be reviewed de novo. Whether a search is constitutional is reviewed de novo, *State v. Anderson*, 733 N.W.2d 128, 136 (Minn. 2007), but whether consent was voluntarily given is a question of fact and is reviewed for clear error, *Diede*, 795 N.W.2d at 846-47. "Findings of fact are clearly erroneous if, on the entire evidence, we are left with the definite and firm conviction that a mistake occurred." *Id.* To establish whether appellant voluntarily consented to the search of her breath, we evaluate the totality of the circumstances surrounding the search, including the nature of the encounter, the kind of person appellant is, and what was said by the parties and how it was said. *Brooks*, 838 N.W.2d at 569. "On appeal, due regard is given to the district court's opportunity to evaluate witness credibility." *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 245 (Minn. App. 2010).

The district court concluded that, "[u]nder the totality of the circumstances, [appellant's] consent was not coerced, but was instead voluntarily given." Specifically, the district court found that appellant "understood that she had decisions to make about whether to contact an attorney, and whether to take the test." The district court found that appellant's "age, inexperience, and custody status [did not] render the decision to take the breath test unconstitutionally coercive."

Appellant argues that the record shows appellant to have been merely acquiescing to a show of legal authority. In exhibit one it is clear that appellant is upset and having difficulty understanding her range of choices. She also tells her father that she is scared. Appellant testified at the hearing that, when Officer Rasmussen ordered her out of her vehicle, she was "very intimidated" and that she took the test because she "felt like [she] didn't have a choice." But our task on appeal is not to find facts. Our task is to review whether the record supports the district court's findings. *See Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 779 (Minn. 1989) ("[A]n appellate court's limited scope of review circumscribes additional fact finding . . . . If the [district] court's findings of fact are not clearly erroneous, they are to be affirmed.").

Appellant's testimony was also conflicting. On cross-examination, she agreed that she understood that she had a choice to make concerning a breath test. Appellant testified that she understood that she had to "decide whether or not to take the test . . . and within a certain amount of time." Appellant further testified that she voluntarily blew into the machine. The district court credited Officer Rasmussen's testimony that appellant told him she understood the implied consent advisory and voluntarily took the test. These

6

credibility determinations, along with the evidence in exhibit one, support the district court's determination that, under the totality of the circumstances, appellant freely and voluntarily consented to a breath test.

The district court's findings do not leave us with the "definite and firm conviction that a mistake occurred." *See Diede*, 795 N.W.2d at 846-47. That the record might support a different conclusion than the one made by the district court does not require a finding of clear error. *Vangsness v. Vangsness*, 607 N.W.2d 468, 474 (Minn. App. 2000).

The evidence of record supports the district court's findings, and those findings support the district court's determination that appellant consented to the test of her breath. As consent is a valid exception to the warrant requirement, the search in this case was constitutional.

**Affirmed.**