Susan LEE, Appellant,

v.

**FRESENIUS MEDICAL CARE, INC., Respondent.**

No. A05–1887.

Court of Appeals of Minnesota.

Aug. 8, 2006.

Don L. Bye, Duluth, MN, for appellant.

Sandro M. Garofalo, Marko Mrkonich, Littler Mendolson, P.C., Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; PETERSON, Judge; and MINGE, Judge.

## OPINION

PETERSON, Judge.

This appeal is from a summary judgment that appellant Susan Lee is not entitled to be paid for unused vacation time that she had earned at the time she was discharged because Lee's employment con-

tract included a provision that an employee who is terminated for misconduct is not eligible for payment of earned but unused vacation time, and Lee was discharged for misconduct. We reverse and remand.

## FACTS

Appellant Susan Lee began working at the Miller–Dwan dialysis center in Duluth in 1991 and became an employee of respondent Fresenius Medical Care, Inc. in August 2000 when Miller–Dwan sold its dialysis center to Fresenius. On August 31, 2000, Lee signed an acknowledgement stating that she received a copy of the Fresenius employee handbook. The handbook states the company policy that an employee who leaves employment is eligible to be paid for earned but unused vacation time,[1] if the employee gives proper notice. The handbook also states, "In addition, if your employment is terminated for misconduct, you will not be eligible for ... payment of earned but unused [paid time off] unless required by state law."

In 2002, Fresenius terminated Lee's employment.[2] Fresenius paid Lee her accumulated wages, but it did not pay her for earned but unused vacation time. Lee brought an action in conciliation court seeking compensation for 181.86 hours of vacation time that she claimed she had earned but had not used when Fresenius terminated her employment. The conciliation court awarded Lee vacation pay, and Fresenius removed the case to the district court. Fresenius moved for summary judgment, and the district court determined that under her employment contract, Lee was not entitled to be paid for

---

1. The handbook refers to vacation as "Paid Time Off," but Fresenius states in its brief that it uses the terms "vacation" and "paid time off" interchangeably.

2. The district court found that Lee did not dispute that she was terminated for misconduct. Lee argues on appeal that the reason why she was terminated is disputed. Under our analysis, it is not necessary to determine whether Lee was terminated for misconduct.

her earned but unused vacation time. Based on this determination, the district court granted the motion for summary judgment. This appeal followed.

## ISSUE

Is Lee entitled to be paid for vacation time that she had earned and had not used at the time she was discharged?

## ANALYSIS

On appeal from a summary judgment, we determine whether there are any genuine issues of material fact and whether the district court erred in its application of law. *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn.2001). We view the evidence "in the light most favorable to the party against whom summary judgment was granted and any doubts about the existence of a material fact are resolved in that party's favor." *Id.* Application of a statute to the undisputed facts of a case involves a question of law, and the district court's decision is not binding on this court. *O'Malley v. Ulland Bros.*, 549 N.W.2d 889, 892 (Minn.1996).

■ In Minnesota, an employer who discharges an employee is required by statute to pay the discharged employee any wages that the employee has earned. The statute provides:

> When any employer employing labor within this state discharges an employee, the wages or commissions actually earned and unpaid at the time of the discharge are immediately due and payable upon demand of the employee. If the employee's earned wages and commissions are not paid within 24 hours after demand, whether the employment was by the day, hour, week, month, or piece or by commissions, the employer is in default. The discharged employee may charge and collect the amount of the employee's average daily earnings at

the rate agreed upon in the contract of employment, for each day up to 15 days, that the employer is in default, until full payment or other settlement, satisfactory to the discharged employee, is made.

Minn.Stat. § 181.13(a) (2004).

The statute does not define "wages." But this court applied the statute in an action seeking compensation for accrued vacation time brought by employees whose employer closed its Minnesota operations and terminated their employment. *Brown v. Tonka Corp.*, 519 N.W.2d 474, 475 (Minn.App.1994). In *Brown*, this court recognized that an employer's liability for employees' vacation pay is wholly contractual and determined that having received the benefit of the discharged employees' work product, the employer was obligated to pay the employees for the accrued vacation time that they had accumulated while working for the employer. *Id.* at 477. Based on this court's reasoning in *Brown*, we conclude that when used in Minn.Stat. § 181.13(a), the term "wages" includes compensation for accrued vacation time accumulated under the terms of an employment contract and that under Minn.Stat. § 181.13(a), compensation for accrued vacation time actually earned and unpaid at the time an employee is discharged must be paid in the same manner as other wages and commissions.

■ The district court determined that when an employer discharges an employee, the employer is obligated under Minn. Stat. § 181.13(a) to pay the employee for accrued vacation time. But the district court determined further that Fresenius was not obligated to pay Lee for accrued vacation time because an employer's liability for an employee's vacation pay is wholly contractual, and under the policy stated in the Fresenius employee handbook, an employee who is terminated for misconduct is

not eligible for payment of earned but unused vacation time. The district court determined that the policy stated in the employee handbook was a part of the employment contract between Fresenius and Lee, and, therefore, because Lee was discharged for misconduct, she was not entitled to be paid for her unused vacation time under the terms of her contract.

Although it is generally true that an employer's liability for an employee's vacation pay is wholly contractual, the district court's conclusion that Lee was not entitled to be paid for her unused vacation time under the terms of her contract fails to recognize the principle that "[a] party cannot provide by contract what is prohibited by statute." *Winnetka Partners Ltd. P'ship v. County of Hennepin*, 538 N.W.2d 912, 914 (Minn.1995). In *Winnetka Partners*, the owner of an apartment complex, in exchange for tax-increment financing, entered into a minimum-assessment agreement with a local housing and redevelopment authority (HRA). *Id.* at 913. The agreement set the minimum market value of the apartment complex at $6,000,000 and provided that this amount would increase by a specified annual percentage rate. *Id.* The county assessor certified this value, as required by state statute. *Id.* Several years later, the owner and the HRA entered into an addendum to the original minimum-assessment agreement, which reduced the minimum market value of the property and stated in paragraph 2 that " '[t]his agreement shall be effective as of January 1, 1991 for taxes payable calendar year 1992 and thereafter.' " *Id.* (alteration in original). The county assessor signed a certification statement for the addendum on June 1, 1993, which stated, " '[n]otwithstanding the language contained in paragraph 2 of the Addendum to Assessment Agreement, this Addendum shall be effective as of the date this Certif-

icate is signed by the County Assessor for the purposes of determining the subject property's fair market value and corresponding real estate taxes.' " *Id.* (alteration in original).

Before the assessor signed the addendum certification, the property owner filed a petition in tax court, seeking a reduction in the January 2, 1992 assessment for the property. *Id.* After the assessor signed the addendum certification, the property owner filed a petition in district court, seeking an alternative writ of mandamus to compel the assessor to certify the addendum for years before 1993. *Id.* at 913–14. The county filed a request to quash the writ, and the district court transferred the mandamus action to the tax court to be combined with the tax petition that the property owner previously filed. *Id.* at 914. The tax court issued an order quashing the alternative writ of mandamus and granting the assessor and the county summary judgment. *Id.*

The property owner appealed, and the supreme court affirmed. *Id.* at 914–15. The supreme court noted that for the years retroactively included in the addendum, the property owner had a minimum-assessment agreement in effect. *Id.* at 914. The supreme court then quoted a statute that governed assessment agreements, which stated:

> "The owner of the property may seek, through the exercise of administrative and legal remedies, a reduction in market value for property tax purposes, but no city assessor, county assessor, county auditor, board of review, board of equalization, commissioner of revenue, or court of this state shall *grant a reduction of the market value below the minimum market value contained in the assessment agreement during the term of the agreement filed of record. . . .*"

**226**

*Id.* (quoting Minn.Stat. § 469.177, subd. 8 (1992)). The supreme court concluded that if the provision in the addendum stating that it was to be effective as of January 1, 1991, for taxes payable in calendar year 1992 and thereafter were given effect, the addendum would violate Minn.Stat. § 469.177, subd. 8, and, therefore, the retroactivity provision of the addendum could be given no legal effect. *Id.* at 914–15.

Applying the supreme court's reasoning in *Winnetka Partners* to the facts of this case, we conclude that the provision in Lee's contract that an employee who is terminated for misconduct is not eligible for payment of earned but unused vacation time [3] can be given no legal effect. Under Minn.Stat. § 181.13(a), when an employer discharges an employee, any compensation for accrued vacation time that the employee has earned but has not been paid at the time of the discharge is immediately due and payable upon demand of the employee. The statute requires the employer to pay the employee for the accrued vacation time. However, under Lee's contract, if she is discharged for misconduct, Fresenius is not required to pay her for earned but unused vacation time. Minn.Stat. § 181.13(a) does not contain an exception for an employee who is discharged for misconduct, and the effect of the contract provision is to allow what the statute prohibits. Therefore, the contract provision violates Minn.Stat. § 181.13(a) and can be given no legal effect.

### DECISION

The provision in Lee's contract that makes an employee who is terminated for

misconduct ineligible for payment for earned but unused vacation time allows Fresenius to avoid paying a discharged employee for accrued vacation time that is earned and unpaid at the time of the discharge. Therefore, the contract provision allows what Minn.Stat. § 181.13(a) prohibits, and the district court erred in giving the provision legal effect.

**Reversed and remanded.**

3. Lee argues that she is entitled to a trial to determine whether the provisions in the employee handbook make her ineligible for payment for earned but unused vacation. But it is not necessary to conduct a trial for the purpose of interpreting the provisions in the employee handbook because if the handbook does not make Lee ineligible for payment for earned but unused vacation, she is entitled to payment, and if a provision in the handbook makes her ineligible for payment, the provision has no legal effect, and Lee is entitled to payment in spite of the provision.