*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0226**

Mario Vasquez,
Relator,

vs.

Safe-Way Bus Co.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed October 20, 2014
Affirmed
Larkin, Judge
Dissenting, Smith, Judge**

Department of Employment and Economic Development
File No. 31696368-4

Mario M. Vasquez, Minneapolis, Minnesota (pro se relator)

Safe-Way Bus Co., Inver Grove Heights, Minnesota (respondent)

Lee B. Nelson, Minnesota Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Smith, Presiding Judge; Larkin, Judge; and Bjorkman, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Relator challenges an unemployment-law judge's decision that he is ineligible for unemployment benefits because he was discharged for employment misconduct. We affirm.

**FACTS**

On May 9, 2013, relator Mario Vasquez began working for respondent Safe-Way Bus Co. as a school bus driver. He was discharged on September 25 after another Safe-Way employee reported that he had used his cellular phone while driving. Vasquez applied for unemployment benefits, and respondent Minnesota Department of Employment and Economic Development (DEED) sent information requests to Vasquez and Safe-Way.

In response to the request, Safe-Way's president stated that Vasquez was terminated because his use of a cellular phone while driving violated Minnesota law[1] and company policy. She submitted a copy of Safe-Way's employee handbook, which included the policy. The policy reads, "You are not to use a cellular telephone while driving the bus. You are not to use a 'hands-free' headset for a cellular phone while driving the bus. You are not to text while driving the bus. Using a cell phone while

---

[1] "A school bus driver may not operate a school bus while communicating over, or otherwise operating, a cellular phone for personal reasons, whether handheld or hands free, when the vehicle is in motion or a part of traffic." Minn. Stat. § 169.443, subd. 9(b) (Supp. 2013).

driving will result in termination." The president stated that Vasquez was made aware of this policy during training and monthly driver in-service meetings and that signs posted throughout Safe-Way's property reminded drivers not to use cellular phones while operating buses. She also stated that Vasquez was warned about the policy two days before he was discharged.

In Vasquez's response to DEED's information request, he stated that he was aware of Safe-Way's policy and acknowledged being warned about it shortly before his discharge. He admitted that he "neglected" to silence his cellular phone before work on September 25, that the phone rang while he was driving, that he removed the phone from his pocket, and that he "glanced at it to shut off the ringer because it annoyed [him] while driving." But he denied violating Safe-Way's policy.

Based on this information, DEED determined that Vasquez was ineligible for unemployment benefits. The department found that Vasquez had violated Safe-Way's policy and committed employment misconduct because he "had his cell phone on while driving the bus."

Vasquez appealed the determination, and an unemployment-law judge (ULJ) convened an evidentiary hearing on November 22. Safe-Way's president and Vasquez testified at the hearing. The president testified that she had warned Vasquez about the company's cellular-phone policy on September 23, after a bus aide reported that Vasquez had used his phone while driving. She stated that she had "a very, very specific conversation with [Vasquez] in regards to the cell phone, that it is against the law, that it's against company policy, and that it isn't to be tolerated." She advised Vasquez "that

3

this was his only warning for this behavior and if it happened again he would be terminated." She also told him, "[I]f you need to have your cell phone on you then make sure the ringer is off. If, if you don't think you can remember to do that, leave your cell phone on my desk during the route. . . . Therefore, you won't be tempted or distracted by the ring or using it."

The president also testified that on September 25, the same bus aide reported that Vasquez once again used his cell phone while driving. She stated that she met with Vasquez in her office and asked him whether he remembered their conversation from two days earlier and whether he had used his cellular phone. She stated that Vasquez did not immediately respond, but he eventually answered that he had used his cellular phone after she told him that not responding to her question "was not favorable on his behalf."

Vasquez testified that he was aware of the company's cellular-phone policy before September 23, but he denied that he had talked on his cellular phone while driving or that he admitted otherwise to Safe-Way's president. He stated that while he was driving on September 25, his cellular phone rang, he took it out of his pocket, and he turned it off. The ULJ asked Vasquez if he was told to have his cellular phone silenced while driving, and Vasquez responded, "I believe [the company president], she did tell me that . . . she did tell me that it should be kept on in silence."

The ULJ determined that Vasquez had committed employment misconduct and was therefore ineligible to receive unemployment benefits. The ULJ found that Vasquez had "talked" on his cellular phone while driving on September 23, was subsequently advised "to turn his phone to silent or leave the phone in [the president's] office to avoid

4

being distracted by the phone," and "answered" his cellular phone after it rang while he was driving on September 25. The ULJ also found that the president's testimony was more credible than Vasquez's because "Vasquez's testimony was hesitant and evasive" while the president's was "more detailed and consistent."

Vasquez requested reconsideration, arguing that he had been prejudiced by his inability to question the bus aide who had reported the cellular phone use and that his act of silencing the ringer on his cellular phone did not constitute "use" of the cellular phone. The ULJ affirmed the determination that Vasquez was ineligible for unemployment benefits because he had committed employment misconduct, reasoning that a "[ULJ] is permitted to consider hearsay testimony" and that Safe-Way's president had testified that Vasquez admitted to using the cellular phone on September 25. The ULJ further found that Vasquez's specific acts, described as "removing his cell phone from his pocket while it was ringing, looking at it, and turning it off," constituted "use" of the cellular phone and employment misconduct.

Vasquez appeals by writ of certiorari.

## DECISION

This court may reverse or modify a ULJ's decision "if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision" are "unsupported by substantial evidence in view of the entire record as submitted" or "affected by other error of law." 2014 Minn. Laws ch. 271, art. 1, § 1, at 1028-29 (to be codified at Minn. Stat. § 268.105, subd. 7(d) (2014)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

5

support a conclusion." *Minneapolis Van & Warehouse Co. v. St. Paul Terminal Warehouse Co.*, 288 Minn. 294, 299, 180 N.W.2d 175, 178 (1970) (quotation omitted).

An employee who is discharged for employment misconduct is ineligible to receive unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2012). Employment misconduct means "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." *Id.*, subd. 6(a) (2012). "As a general rule, refusing to abide by an employer's reasonable policies and requests amounts to disqualifying misconduct." *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn. 2002). But "conduct that was a consequence of the applicant's inefficiency or inadvertence" and "good faith errors in judgment if judgment was required" are not employment misconduct. Minn. Laws ch. 239, art. 2, § 5, at 772-73 (to be codified at Minn. Stat. § 268.095, subd. 6(b)(2), (6) (2014)).

Whether an employee committed employment misconduct "is a mixed question of fact and law." *Schmidgall*, 644 N.W.2d at 804. Whether a particular act constitutes employment misconduct is a question of law, which we review de novo. *Scheunemann v. Radisson S. Hotel*, 562 N.W.2d 32, 34 (Minn. App. 1997). Whether the employee committed the particular act, however, is a question of fact. *Id.* We review the ULJ's factual findings "in the light most favorable to the decision" and defer to the ULJ's credibility determinations. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn. App. 2006).

6

Vasquez contends that he did not commit misconduct because "he engaged in merely unsatisfactory performance and/or made good faith errors in judgment." He argues that he "interpreted the no-cell-phone-use policy and his prior warning to mean not making (talking) or receiving (listening to) calls" and that "[h]e did not realize that the act of silencing his ringing phone was included in his employer's definition of cell phone use while driving." He also argues that the ULJ's decision is not supported by substantial evidence and that we should therefore disregard the ULJ's explicit credibility determinations.

The relevant facts are not in dispute. Vasquez did not silence the ringer on his cellular phone before driving a school bus for his employer, two days after being told that he must do so to comply with his employer's cellular-phone policy. And he silenced the ringer after his cellular phone rang while he was driving the bus. We consider, de novo, whether those facts establish misconduct. In doing so, we focus on Vasquez's undisputed failure to silence his cellular phone *before* driving the bus, instead of his act of silencing the phone while driving the bus.[2]

The ULJ's amended order states, "[Safe-Way's president] reminded [Vasquez] of the [no-use] policy and advised [Vasquez] that he would be discharged for further policy

---

[2] We need not decide whether relator's act of silencing the cellular phone constitutes use of the phone. We agree with the ULJ's determination that "[i]t is reasonable to define removing a ringing cell phone from a pocket, looking at it, and turning it off as 'use' of a cell phone." However, it is not necessary for us to define the term "use" in this case given Vasquez's failure to silence his cellular phone before driving the bus.

7

violations. [The president] told [Vasquez] to put his phone on silent or leave the phone in her office so that he would not be distracted by his phone while driving." The order also states that Vasquez "admits to removing his cell phone from his pocket while it was ringing, looking at it, and turning it off while driving the bus after being warned regarding cell phone use and told to keep his phone on silent."

The record substantially supports those findings. Safe-Way's president testified that the purpose of the no-use policy is to prevent distracted driving. She explained:

> The use of the cell phone is huge. It is absolutely the most distractive thing that can happen. He's transporting children. It's against Minnesota State Law. We talk about it in training, pre-hire training. We talk about it in driver safety meetings. It's in our handbook. There's signs posted all over. This is big, big, big. There's been articles in the newspapers and on TV and on [YouTube] where cell phones are, they're so distractive that they cause accidents.

The president also testified that two days before Vasquez's discharge, she "had a very, very specific conversation with [him] in regards to the cell phone, that it is against the law, that it's against company policy, and that it isn't to be tolerated." She told him that "this was his only warning for this behavior and if it happened again he would be terminated." She also advised Vasquez, "[I]f you need to have your cell phone on you then *make sure the ringer is off*. If, if you don't think you can remember to do that, leave your cell phone on my desk during the route. . . . Therefore, you won't be tempted or *distracted by the ring* or using it." (Emphasis added.)

Vasquez's testimony regarding the requirement that he silence his cellular phone before driving was consistent with that of Safe-Way's president. When the ULJ asked

8

Vasquez, "were you told that you needed to keep your phone on silence if you were going to have it on you while you were driving," Vasquez responded, "I believe [the company president], she did tell me that . . . she did tell me that it should be kept on in silence." Vasquez also agreed that on the day of his discharge, his phone rang while he was driving and that he took it out of his pocket to turn it off.

Moreover, Vasquez's appellate brief buttresses the ULJ's findings. Vasquez concedes that he "knew, and had been recently warned, that he should remember to silence his phone before he started his bus route"; "he had been warned to avoid distracted driving and to have his phone on silent while driving the bus"; "[t]he ringing phone was distracting and he had been warned by [the company president] that distracted driving caused by a cell phone would not be tolerated"; and he "was supposed to have silenced his phone prior to beginning his bus route, but he did not remember to do so."

The record and Vasquez's concessions establish two things. First, Vasquez was warned and understood that if he chose to have his cellular phone with him while driving a school bus for his employer, he had to silence the ringer *before* driving. Second, a ringing cellular phone would result in the type of distraction that Safe-Way's no-use policy is intended to avoid. Vasquez's admission in his brief that his "ringing phone was distracting" belies his argument that he understood the no-use policy and his prior warning to prohibit only "making (talking) or receiving (listening to) calls." Moreover, Vasquez's argument that "[h]e did not realize that the act of silencing his ringing phone was included in his employer's definition of cell phone use while driving" unreasonably ignores the impermissible distraction that resulted from his failure to silence his cellular

9

phone before driving the bus. It also ignores the specific warning he received from Safe-Way's president to silence his cellular phone before driving the bus.

In our view, Vasquez's violation of his employer's reasonable, unambiguous directive that he silence the ringer on his cellular phone before driving the school bus constitutes misconduct. That directive left no room for Vasquez to exercise judgment. Vasquez's pleas that he merely forgot to silence his cellular phone and did not intend to violate the directive are unavailing. Vasquez had been confronted regarding an alleged violation of the cellular-phone policy two days earlier. His employer specifically told him that future violations would result in his discharge and that the ringer on his phone must be silenced to avoid distracted driving. Under those circumstances, Vasquez's failure to make sure that the ringer on his cellular phone was turned off before he drove the school bus was negligent conduct that clearly displayed a serious violation of the standards of behavior Safe-Way had the right to reasonably expect.

In sum, we affirm the ULJ's decision because under the circumstances here, Vasquez's failure to silence the ringer on his cell phone before driving a school bus for his employer constitutes employment misconduct.

**Affirmed.**

10

**SMITH**, J. (dissenting)

I respectfully dissent because I believe the majority misinterprets an employer's suggestion as a directive, thereby engaging in inappropriate fact-finding and undermining the remedial purpose of the unemployment-benefits statute.

The majority relies entirely on the notion that Vasquez's supervisor directed him to set his cell phone ringer on silent. When his phone rang on September 25, then, he had supposedly already committed employment misconduct regardless of whether he talked on the phone or otherwise "used" it. This interpretation of the record departs dramatically from Safe-Way's own stated reasons for terminating Vasquez's employment and inappropriately adds to the ULJ's factual findings. When responding to DEED's request for information, Vasquez's supervisor stated that his employment was terminated because he had *talked* on his phone on September 25. When testifying at the evidentiary hearing, she explicitly disavowed this claim, however, stating that the employee who had reported Vasquez's behavior had only stated that Vasquez "used" his cell phone on September 25 and that the reporting employee "didn't elaborate."[1] Apparently

---

[1] The reporting employee, Pete (the supervisor was unsure as to his last name), did not testify at the hearing. It is troubling that Safe-Way relied on an unelaborated report that Vasquez "used" his cell phone on September 25 to conclude that he had violated the company's policy. Vasquez's supervisor testified that, other than the September 23 and 25 incidents, Vasquez had no disciplinary incidents that she could recall. It is also troubling that the ULJ implicitly relied upon Pete's hearsay testimony, but did not state any reasons for finding the hearsay to be credible. *See* Minn. R. 3310.2922 (2013) (allowing ULJs to consider hearsay evidence). *But see also* Minn. Stat. § 268.105, subd. 1(c) (2012) ("When the credibility of [a] witness testifying in an evidentiary hearing has a significant effect on the outcome of a decision, the unemployment law judge must set out the reason for crediting or discrediting that testimony.").

D-1

recognizing this shift, the ULJ on reconsideration abandoned his original finding that Vasquez had "answered" his cell phone while driving on September 25, and relied instead on the legal finding that Vasquez's admitted-to silencing of the ringer constituted "use" in violation of Safe-Way's policies. The majority's finding that the employer had a policy requiring that cell phone ringers be silenced thus produces a *fourth* in a constantly shifting series of justifications for discharging Vasquez. More importantly, it casts this court in a fact-finding role that is beyond our purview. *See Kucera v. Kucera*, 275 Minn. 252, 254, 146 N.W.2d 181, 183 (1966).

The majority's reinterpretation of the record also runs afoul of both the remedial purpose of the unemployment-benefits statute and our caselaw governing when employers may justifiably terminate employees for violations of the employer's policies. Vasquez's supervisor testified that bus drivers are permitted to possess their personal cell phones while driving, but that "the ringer *should* be on silent." There is nothing in that statement that indicates that compliance is required. *Cf.* Minn. Stat. § 645.44, subds. 15, 15a, 16 (2012) (instructing that "shall" and "must" indicate mandatory directives, but that "may" is permissive). This interpretation of Safe-Way's policy is reinforced by its policy as stated in its employee handbook and on its signs posted in the workplace, both of which prohibit (or in the case of the signs merely limit) talking and texting while driving a school bus, but make no mention of any requirement that the ringers be silenced. To hold Vasquez to a higher standard in interpreting and complying with his employer's policies than the legislature holds citizens runs contrary to the legislature's explicitly stated intent. *See* Minn. Stat. § 268.031, subd. 2 (2012) ("This chapter is remedial in

D-2

nature and must be applied in favor of awarding unemployment benefits. Any legal conclusion that results in an applicant being ineligible for unemployment benefits must be fully supported by the facts. In determining eligibility for benefits, any statutory provision that would preclude an applicant from receiving benefits must be narrowly construed."). By interpreting the statutory employment-misconduct definition to include violations of an employer's suggestions as well as its directives, I believe that the majority flips the legislature's standard on its head.

In the context of adjudicating contractual disputes between employers and employees, the supreme court has held that statements of an employer's policies contained in an employee handbook are binding when they are "definite in form" and "communicated to the employee." *Lee v. Fresenius Med. Care, Inc.*, 741 N.W.2d 117, 123 (Minn. 2007). Once these conditions are met, "the parties are bound by the terms of the handbook to the extent that they are valid under Minnesota law." *Id.* Here, any purported Safe-Way policy mandating that cell phone ringers must be silenced was far from definite in form and was absent from both Safe-Way's employment handbook and its other communications with its drivers. Indeed, it appears that, despite Vasquez's supervisor's statements highlighting the alleged importance of this purported policy, it was phrased ambiguously as part of a list of suggestions and communicated only to Vasquez. Even if it were our role to engage in fact-finding regarding the content of Safe-Way's policies, I would not find that any policy requiring silenced cell phone ringers existed. And because Minnesota law directs that we resolve doubts in favor of a

determination that awards unemployment benefits to an applicant, I would hold that there is an insufficient factual basis to deny benefits to Vasquez.